IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PROGRESSIVE NORTHERN INSURANCE COMPANY OF ILLINOIS as subrogee of DANIEL VANDERIET, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) Case No. 3:16-CV-951-NJR-SCW<br>)<br>) |
| FORD MOTOR COMPANY, | )<br>) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter comes before the Court on the Motion for Summary Judgment as to Count I (Doc. 44) and the Motion to Dismiss Counts II and III (Doc. 48) filed by Defendant Ford Motor Co. ("Ford"). For the reasons set forth below, the motions are granted.

### BACKGROUND

This dispute arises from an incident that occurred around midnight on October 7, 2014, in which a 2002 Ford F-150 owned by Daniel Vanderiet caught fire while parked outside Vanderiet's mobile home in Shiloh, Illinois (Doc. 44-2, p. 7-13). The fire, which began in the engine compartment of the truck, allegedly was caused by a defective speed control deactivation switch and defects in the vehicle's electrical and mechanical systems (Doc. 44-2, p. 17; Doc. 53, p. 1). The fire resulted in the loss of the truck, as well as damage to Vanderiet's mobile home (Doc. 1, pp. 6, 9; Doc. 44-2, p. 8-9). Vanderiet had

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PROGRESSIVE NORTHERN INSURANCE COMPANY OF ILLINOIS as subrogee of DANIEL VANDERIET, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) Case No. 3:16-CV-951-NJR-SCW<br>)<br>) |
| FORD MOTOR COMPANY, | )<br>) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter comes before the Court on the Motion for Summary Judgment as to Count I (Doc. 44) and the Motion to Dismiss Counts II and III (Doc. 48) filed by Defendant Ford Motor Co. ("Ford"). For the reasons set forth below, the motions are granted.

### BACKGROUND

This dispute arises from an incident that occurred around midnight on October 7, 2014, in which a 2002 Ford F-150 owned by Daniel Vanderiet caught fire while parked outside Vanderiet's mobile home in Shiloh, Illinois (Doc. 44-2, p. 7-13). The fire, which began in the engine compartment of the truck, allegedly was caused by a defective speed control deactivation switch and defects in the vehicle's electrical and mechanical systems (Doc. 44-2, p. 17; Doc. 53, p. 1). The fire resulted in the loss of the truck, as well as damage to Vanderiet's mobile home (Doc. 1, pp. 6, 9; Doc. 44-2, p. 8-9). Vanderiet had

purchased the Ford F-150 new from Jack Schmidt Ford in Collinsville, Illinois, in 2002 (Doc. 42-2, p. 14), and he maintained a comprehensive policy of insurance on the vehicle with Plaintiff Progressive Northern Insurance Company of Illinois ("Progressive"). Progressive paid Vanderiet $118,751.67 in settlement of his property damage claim (Doc. 1, p. 6-7).

In consideration of this payment, Progressive avers it is subrogated to all the claims Vanderiet may have against any party responsible for the fire and the resulting loss of his truck and damages to his mobile home (Doc. 1, p. 7). On April 22, 2016, Progressive commenced this subrogation action by filing a three-count complaint against Ford in the Circuit Court of Cook County, Illinois (Doc. 1, p. 1). The complaint asserts claims of breach of implied warranty of merchantability (Count I), strict liability (Count II), and negligence (Count III) (Doc. 1, p. 8-10). The action was removed to the United States District Court for the Northern District of Illinois based on complete diversity of citizenship and was subsequently transferred to this District (Doc. 1, p. 1). Progressive seeks to recover the $118,751.67 it paid Vanderiet plus costs.

On December 23, 2016, Ford filed a Motion for Summary Judgment as to Count I (Doc. 44), arguing that Progressive's breach of implied warranty of merchantability claim is barred by the applicable Illinois statute of limitations (Doc. 44, p. 1). Ford also filed a Motion to Dismiss Counts II and III under Rule 12(b)(6) of the Federal Rules of Civil Procedure (Doc. 48), asserting that Progressive's strict liability and negligence claims are barred by the economic loss doctrine. On January 25, 2017, Progressive filed a

response to Ford's Motion to Dismiss (Doc. 53). Progressive did not respond to Ford's Motion for Summary Judgment as to Count I.

## ANALYSIS

I. **Ford's Motion for Summary Judgment as to Count I—Breach of Implied Warranty of Merchantability**

The Court first addresses the Motion for Summary Judgment filed by Ford, which argues that Count I of the complaint is time barred by Illinois' four-year statute of limitations for claims of breach of implied warranty of merchantability.

The standard applied to summary judgment motions filed under Rule 56 is well-settled and has been succinctly stated as follows:

> Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining whether a genuine issue of material fact exists, [the court] must view the record in a light most favorable to the nonmoving party. Because the primary purpose of summary judgment is to isolate and dispose of factually unsupported claims, the nonmovant may not rest on the pleadings but must respond, with affidavits or otherwise, setting forth specific facts showing that there is a genuine issue for trial. The evidence must create more than some metaphysical doubt as to the material facts. A mere scintilla of evidence in support of the nonmovant's position is insufficient; a party will be successful in opposing summary judgment only when it presents definite, competent evidence to rebut the motion.

*Albiero v. City of Kankakee*, 246 F.3d 927, 931–32 (7th Cir. 2001).

Where a claim or defense is factually unsupported, it should be disposed of on summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Furthermore, Rule 56(e) states that if a party fails to properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of

the motion. FED. R. CIV. P. 56(e); *see also* SDIL Local Rule 7.1 (c) ("Failure to timely file a response to a motion may, in the Court's discretion, be considered an admission of the merits of the motion."). Because Progressive did not respond to Ford's motion for summary judgment, the Court considers the facts as presented by Ford to be undisputed for the purposes of this motion.

In Count I, Progressive alleges Ford breached its duty under the Illinois Uniform Commercial Code, 810 ILCS 5/2-314 (2016), which provides "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Specifically, Progressive claims that the subject truck was not merchantable and not fit for the ordinary purposes for which a truck is used because "it had a defective speed control deactivation switch . . . which constituted a hazardous and defective condition." (Doc. 1, p. 8).

Ford argues that it is entitled to summary judgment on this claim because the relevant statute of limitations expired well before Progressive brought suit. Under Illinois law, the statute of limitations for a claim of breach of implied warranty is four years. 810 ILCS 5/2-725. The statute states, in relevant part:

> (1) An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued. . . .
>
> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

810 ILCS 5/2-725 (2016). In other words, "a breach of an implied warranty is complete when a defective product is delivered, and the statute of limitations begins running at delivery, even if the buyer could not discover the defect until later." *Singer v. Sunbeam Prod., Inc.*, No. 15-C-1783, 2015 WL 4555188, at *3 (N.D. Ill. 2015); *see also Cosman v. Ford Motor Co.*, 285 Ill. App. 3d 250, 257, 674 N.E.2d 61, 66 (Ill. App. Ct. 1996) (under the UCC, "an implied warranty of merchantability only applies to the condition of the goods at the time of sale—not to their future performance"); *Owens v. Glendale Optical Co.*, 590 F. Supp. 32, 36 (S.D. Ill. 1984) (holding claim of implied warranty was untimely because "breach of warranty occurs when tender of delivery is made" and "the alleged breach occurred more than four years before" suit was filed); *LaPorte v. R.D. Werner Co., Inc.*, 561 F.Supp. 189, 191–92 (N.D. Ill. 1983) (noting that Illinois authorities "uniformly support th[e] straightforward reading" that § 2–725(2) "denies applicability of the discovery doctrine to all implied warranty actions").

Here, the undisputed facts establish that Ford delivered the subject F-150 to the original purchaser (Jack Schmidt Ford) on October 19, 2002 (Doc. 44, p. 2). Therefore, the statute of limitations for a claim of breach of implied warranty expired on October 19, 2006. Because Progressive did not bring its claim until April 22, 2016—nearly a decade after the statute of limitations expired—Count I is time-barred, and Ford is entitled to summary judgment on Count I.

## II.     Motion to Dismiss Counts II and III

Ford also has moved to dismiss Counts II and III, Progressive's claims of strict liability and negligence, to the extent Progressive seeks recovery of damages for the loss

of the Ford F-150. Ford argues that the economic loss doctrine bars recovery in tort for the loss of an allegedly defective product; therefore, Progressive's claim for damages related to the loss of the truck should be dismissed (Doc. 48, p. 4).

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While a complaint need not include detailed factual allegations, there "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The plaintiff must "plead [] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). "In reviewing the sufficiency of a complaint under the plausibility standard, [a court must] accept the well-pleaded facts in the complaint as true, but [it] 'need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

Under the economic loss doctrine, or the *Moorman* doctrine as it known in Illinois, recovery for solely economic losses in relation to a product may not be had upon the tort theories of negligence or strict liability. *Moorman Manufacturing Co. v. National Tank Co.*, 435 N.E.2d 443 (Ill. 1982); *Muirfield Vill.-Vernon Hills, LLC v. K. Reinke, Jr. & Co.*, 349 Ill. App. 3d 178, 192, 810 N.E.2d 235, 247 (Ill. App. Ct. 2004). In *Moorman*,

the plaintiff discovered a crack in a grain storage tank manufactured by the defendant. The damages were limited to the storage tank itself, and the plaintiff sought recovery in tort for the cost of repair and loss of use of the tank. *Moorman*, 435 N.E.2d at 445. The Illinois Supreme Court affirmed the dismissal of the tort claims, holding a plaintiff may not recover in tort "for solely economic loss." *Moorman*, 435 N.E.2d at 448.

"Economic loss" has been defined as damages for inadequate value, costs of repair and replacement of the defective product, or the consequent loss of profits, as well as the diminution of value of the product due to its inferior quality." *Muirfield*, 810 N.E.2d at 247 (quoting *Redarowicz v. Ohlendorf*, 92 Ill.2d 171, 177, 65 Ill.Dec. 411, 441 N.E.2d 324 (Ill. 1982)). The rationale behind the doctrine is that contract law is designed to remedy losses "relating to a purchaser's disappointed expectations due to deterioration, internal breakdown or nonaccidental cause," whereas "[t]ort theory is appropriately suited for personal injury or property damage resulting from a sudden or dangerous occurrence . . . ." *Moorman*, 435 N.E.2d at 450.

There are three exceptions to the economic loss doctrine: "(1) where the plaintiff has sustained personal injury or property damage resulting from a sudden or dangerous occurrence; (2) where the plaintiff's damages are proximately caused by the defendant's intentional, false representation; and (3) where the plaintiff's damages are proximately caused by the defendant's negligent misrepresentation where the defendant is in the business of supplying information to guide others in their business transactions." *Muirfield*, 810 N.E.2d at 247 (citing *In re Chicago Flood Litigation*, 176 Ill.2d 179, 199, 223 Ill.Dec. 532, 680 N.E.2d 265 (1997)). In clarifying the sudden or dangerous

occurrence exception, the Illinois Supreme Court stated: "[T]he event, by itself, does not constitute an exception to the economic loss rule. Rather, the exception is composed of a sudden, dangerous, or calamitous event coupled with personal injury or property damage." *Trans States Airlines v. Pratt & Whitney Canada, Inc.*, 177 Ill. 2d 21, 27, 682 N.E.2d 45, 48 (Ill. 1997) (quoting *In re Chicago Flood Litig.*, 680 N.E.2d at 275).

In this case, the only applicable exception is the "sudden or dangerous occurrence" exception. Progressive alleged in the complaint that manufacturing defects caused the subject Ford F-150 to catch fire while parked, leading to the total destruction of the vehicle (Doc. 1, p. 7). Progressive also alleged that the fire caused property damage to "additional items," i.e., Vanderiet's mobile home. Thus, the Court finds that Progressive sufficiently pleaded a sudden and dangerous occurrence. *See Loman v. Freeman*, 229 Ill. 2d 104, 110, 890 N.E.2d 446, 452 (Ill. 2008) ("[The *Moorman*] court had in mind fires, explosions, or other calamitous occurrences due to the failure of a product and the resulting risk of harm to persons or property.").

Ford argues, however, that this exception does not apply where damage to the property itself is the subject of the tort action, citing *Muirfield Village-Vernon Hills, LLC v. K. Reinke, Jr. & Co.*, 810 N.E.2d 235 (Ill. App. Ct. 2004). Thus, while fire may constitute a sudden or calamitous event, Progressive cannot use the exception to seek recovery in tort for damage to the Ford F-150. In response, Progressive claims that the "sudden or dangerous occurrence" exception does allow for recovery in tort for both the defective product and other property damaged. Progressive relies primarily on *Redarowicz v. Ohlendorf*, 441 N.E.2d 324 (Ill. 1982), and *Vaughn v. General Motors Corp.*, 466 N.E.2d 195

(Ill. 1984), *overruled by Trans States Airlines v. Pratt & Whitney Canada, Inc.*, 682 N.E.2d 45 (Ill. 1997).

The Court agrees with Ford. Illinois law is well-settled that the sudden or dangerous occurrence exception only applies when a plaintiff incurs either personal injury or damages to property *other than the defective product itself*. *Trans States Airlines*, 682 N.E.2d at 54-55 (holding the sudden and calamitous event exception does not allow recovery in tort "when the product damages itself only"); *Mars, Inc. v. Heritage Builders of Effingham, Inc.*, 763 N.E.2d 428, 436 (Ill. App. Ct. 2002) ("[A] product that damages only itself cannot be the subject of a suit for damages.").

In *Muirfield*, which Ford cites in support of its argument, construction defects caused water to accumulate inside a house, resulting in mold damage to the house and the homeowner's personal belongings. *Muirfield*, 810 N.E.2d at 239. The *Muirfield* court found the mold infestation constituted a sudden or dangerous occurrence that resulted in damage to the homeowner's personal belongings, which constituted property other than the house itself. *Id.* at 249. The court held that while the plaintiffs could not recover for damages accruing from the loss of the house, "as that is a classic economic loss," they could recover for the loss of personal property. *Id.*

Federal district courts interpreting Illinois law have similarly concluded that when damages to other property are properly pleaded, "the sudden and calamitous event exception to the economic loss rule . . . allows a plaintiff to pursue non-economic damages." *Allstate Ins. Co. v. Pulte Homes of St. Louis, LLC*, No. 10-CV-237, 2010 WL 4482360, at *5 (N.D. Ill. Nov. 1, 2010). In *Allstate*, the court held that the economic loss

(Ill. 1984), *overruled by Trans States Airlines v. Pratt & Whitney Canada, Inc.*, 682 N.E.2d 45 (Ill. 1997).

The Court agrees with Ford. Illinois law is well-settled that the sudden or dangerous occurrence exception only applies when a plaintiff incurs either personal injury or damages to property *other than the defective product itself*. *Trans States Airlines*, 682 N.E.2d at 54-55 (holding the sudden and calamitous event exception does not allow recovery in tort "when the product damages itself only"); *Mars, Inc. v. Heritage Builders of Effingham, Inc.*, 763 N.E.2d 428, 436 (Ill. App. Ct. 2002) ("[A] product that damages only itself cannot be the subject of a suit for damages.").

In *Muirfield*, which Ford cites in support of its argument, construction defects caused water to accumulate inside a house, resulting in mold damage to the house and the homeowner's personal belongings. *Muirfield*, 810 N.E.2d at 239. The *Muirfield* court found the mold infestation constituted a sudden or dangerous occurrence that resulted in damage to the homeowner's personal belongings, which constituted property other than the house itself. *Id.* at 249. The court held that while the plaintiffs could not recover for damages accruing from the loss of the house, "as that is a classic economic loss," they could recover for the loss of personal property. *Id.*

Federal district courts interpreting Illinois law have similarly concluded that when damages to other property are properly pleaded, "the sudden and calamitous event exception to the economic loss rule . . . allows a plaintiff to pursue non-economic damages." *Allstate Ins. Co. v. Pulte Homes of St. Louis, LLC*, No. 10-CV-237, 2010 WL 4482360, at *5 (N.D. Ill. Nov. 1, 2010). In *Allstate*, the court held that the economic loss

rule prevented Allstate from recovering for damage to a house flooded by burst pipes, but would not prevent it from recovering for "other property" damage. *Id.; see also Colovos v. OwensCorning Fiberglass Corp.*, 1994 WL 201047, at *2–3 (N.D.Ill. May 18, 1994) (damages to the contents of a building would fall under the "other property" exception to the economic loss rule, but damage to the building itself was an economic loss, recovery for which was barred by *Moorman*). And, in a case involving similar facts as this case, a federal district court in Michigan applied Illinois law and adopted Ford's position. *See In re Ford Motor Co. Speed Control Deactivation Switch Prod. Liab. Litig.*, 664 F. Supp. 2d 752, 766 (E.D. Mich. 2009), *order clarified on recons.* (Jan. 4, 2010) (citing *Trans States Airlines*, 682 N.E.2d 45 (Ill. 1997)). In that case, the court held that "Illinois' economic loss rule bars recovery attributed to the loss of economic value of plaintiffs' vehicles due to [speed control deactivation switches]," but noted that recovery in tort was possible for other property damage. *Id.*

The cases that Progressive relies upon are unpersuasive. In *Redarowicz*, also cited by Ford, a home purchaser sued the seller upon discovering that a chimney and adjoining brick wall were beginning to pull away from the rest of the house, resulting in water leakage in the basement and roof area. *Redarowicz*, 441 N.E.2d at 326. The plaintiff sought recovery in tort for the costs of repairing and replacing the defectively constructed chimney. *Id.* The court explained that in order "[t]o recover in negligence there must be a showing of harm above and beyond disappointed expectations." *Id.* at 327. Applying *Moorman*, the *Redarowicz* court held that the plaintiff could not recover

rule prevented Allstate from recovering for damage to a house flooded by burst pipes, but would not prevent it from recovering for "other property" damage. *Id.; see also Colovos v. OwensCorning Fiberglass Corp.*, 1994 WL 201047, at *2–3 (N.D.Ill. May 18, 1994) (damages to the contents of a building would fall under the "other property" exception to the economic loss rule, but damage to the building itself was an economic loss, recovery for which was barred by *Moorman*). And, in a case involving similar facts as this case, a federal district court in Michigan applied Illinois law and adopted Ford's position. *See In re Ford Motor Co. Speed Control Deactivation Switch Prod. Liab. Litig.*, 664 F. Supp. 2d 752, 766 (E.D. Mich. 2009), *order clarified on recons.* (Jan. 4, 2010) (citing *Trans States Airlines*, 682 N.E.2d 45 (Ill. 1997)). In that case, the court held that "Illinois' economic loss rule bars recovery attributed to the loss of economic value of plaintiffs' vehicles due to [speed control deactivation switches]," but noted that recovery in tort was possible for other property damage. *Id.*

The cases that Progressive relies upon are unpersuasive. In *Redarowicz*, also cited by Ford, a home purchaser sued the seller upon discovering that a chimney and adjoining brick wall were beginning to pull away from the rest of the house, resulting in water leakage in the basement and roof area. *Redarowicz*, 441 N.E.2d at 326. The plaintiff sought recovery in tort for the costs of repairing and replacing the defectively constructed chimney. *Id.* The court explained that in order "[t]o recover in negligence there must be a showing of harm above and beyond disappointed expectations." *Id.* at 327. Applying *Moorman*, the *Redarowicz* court held that the plaintiff could not recover

the repair and replacement costs, reasoning the only losses incurred were "additional expenses for living conditions that were less than what was bargained for." *Id.*

While the conclusion in *Redarowicz* seems contrary to Progressive's view, Progressive argues that the *Redarowicz* court limited its holding: "This is not a case where defective construction created a hazard that resulted in a member of the plaintiff's family being struck by a falling brick from the chimney. The adjoining wall has not collapsed on and destroyed the plaintiff's living room furniture." *Id.* at 327. On the basis of this language, Progressive contends that *Redarowicz* held that "when 'other property' is damaged as a result of a sudden and dangerous occurrence, damage to the defective product" *and* the other property is recoverable in tort (Doc. 48, p. 3). Progressive's argument goes too far. *Redarowicz*'s hypothetical was merely illustrating a "sudden, calamitous occurrence, more appropriately remedied by tort law, while damage resulting from the water leakage constitutes deterioration from a latent defect barred by the *Moorman* doctrine." *Hecktman v. Pac. Indem. Co.*, 59 N.E.3d 868, 875 (Ill. App. Ct. 2016); *see also Metro. Prop. & Cas. Ins. Co. v. James McHugh Const. Co.*, No. 99 C 256, 1999 WL 971283, at *2 (N.D. Ill. Oct. 21, 1999) ("The *Moorman* doctrine does not, however, prevent plaintiff from recovering for other property damage.").

Progressive's reliance on *Vaughn* is similarly misplaced. In that case, the Illinois Supreme Court held that "if a defect in a product 'creates a dangerous condition and causes damages of a sudden and calamitous nature, the loss, even if it is limited to the product itself, is considered property damage and the injured party has a tort action.'" *Vaughn*, 466 N.E.2d at 196. However, *Vaughn* was expressly overruled by *Trans States*

*Airlines*, 682 N.E.2d at 54-55, after the United States Supreme Court issued its opinion in *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858 (1986). In *East River*, the Supreme Court held that an admiralty plaintiff cannot recover in tort for damage that a defective product causes to the "product itself" but can recover for physical damage the product causes to "other property." *East River*, 476 U.S. at 871-72. Thus, Progressive has failed to cite any controlling authority in support of its position.

Lastly, the Court notes that Progressive's inability to state a warranty claim because such a claim is time barred does not change the calculus. *See Anderson Elec. v. Ledbetter Erection Corp.*, 503 N.E.2d 246, 249 (Ill. 1986) ("A plaintiff seeking to recover purely economic losses due to defeated expectations of a commercial bargain cannot recover in tort, regardless of the plaintiff's inability to recover under an action in contract.").

The economic loss doctrine bars Progressive from recovering in tort for the loss of the 2002 Ford F-150 because it does not constitute "other property" damaged as the result of a sudden or dangerous occurrence. Accordingly, Counts II and III must be dismissed to the extent Progressive seeks damages for the loss of the truck. Progressive has adequately stated tort claims for the fire damage to Vanderiet's additional property, i.e., his mobile home, however, because it constitutes "other property" damaged as the result of the fire.

## Conclusion

For these reasons, the Motion for Summary Judgment as to Count I filed by Defendant Ford Motor Co. (Doc. 44) is **GRANTED**. Count I is **DISMISSED with**

**prejudice**. In addition, the Motion to Dismiss (Doc. 48) Counts II and III filed by Ford is **GRANTED** to the extent that Progressive seeks recovery for the loss of the truck. Progressive's claims in Counts II and III survive only to the extent it seeks recovery for damages to Vanderiet's additional property. Progressive's claims for damages related to the loss of the truck are **DISMISSED with prejudice**.

    IT IS SO ORDERED.

    DATED: April 21, 2017

                                            **NANCY J. ROSENSTENGEL**
                                            **United States District Judge**